UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------X
RASHARD WILLIAMS,

               Plaintiff,

    -against-

COUNTY OF NASSAU, POLICE OFFICER
MICHAEL CAREY Shield # 8526, POLICE
OFFICER MONEL Shield # 8916, POLICE
OFFICER BARNE Shield # 8905, POLICE
OFFICER BENED Shield # 7696, SGT. ARNOLD,
POLICE OFFICER JOHN DOE #1, POLICE
OFFICER JOHN DOE #2,

               Defendants.

------------------------------------------------------------X

DECISION AND ORDER
10-CV-4815 (WFK) (ARL)

**WILLIAM F. KUNTZ, II, United States District Judge**

This 42 U.S.C. § 1983 action arises out of Plaintiff Rashard Williams's arrest outside a nightclub in West Hempstead, New York. Plaintiff alleges that he was illegally arrested and assaulted, while Defendants argue that the officers' actions regarding Plaintiff's arrest were legal and justified. Defendants Nassau County, Police Officer Carey, Police Officer Monell, Police Officer Barnes, Police Officer Benedetto, and Sergeant Arnold now move for summary judgment. The Court grants in part and denies in part Defendants' Motion.

## FACTUAL AND PROCEDURAL BACKGROUND

### I. Procedural History

Plaintiff filed this action on October 20, 2010. Dkt. 1 ("Compl."). His Complaint focuses on Plaintiff's allegedly unjustified arrest and beating on October 21, 2007 by a number of Nassau County police officers. *Id.* at ¶¶ 21-47. From that incident, Plaintiff brings 42 U.S.C. § 1983 claims for false arrest and excessive force against Defendants Carey, Monell, Barnes,

1

Benedetto,[1] Arnold, and John Does 1-2. He also brings a *Monell* claim against Nassau County; 42 U.S.C. § 1983 substantive due process claims against all Defendants; § 1983 procedural due process claims against all Defendants; pendent false arrest claims against all Defendants; pendent assault and battery claims against all Defendants; negligent hiring and supervision claims against all Defendants; and failure to intervene claims against the individual Defendants. *See id.* at ¶¶ 51-117.

On April 13, 2012, Defendants moved for summary judgment, and on July 13, 2012, the motion was fully submitted before this Court. *See* Dkts. 19, 22-27. The motion was denied without prejudice on March 26, 2013, *see* 3/26/13 Docket Entry, and Defendants were granted leave to resubmit the motion on April 18, 2013, *see* 4/18/13 Docket Entry (Minute Entry for 4/18/13 Pre-Trial Conference). The re-submitted motion for summary judgment, which asked for dismissal of the entire action, was fully briefed on September 25, 2013. *See* Dkt. 32 (Memorandum in Support of Motion for Summary Judgment ("Mot.")) at 8-9.

## II. Defendants' Allegations

Defendants allege that Plaintiff is a 5'8", approximately 285-300 pound male. Dkt. 31 (Defendant's 56.1 Statement of Material Facts, hereinafter "Def.'s 56.1") at ¶ 65. At approximately 3:30 a.m. on October 21, 2007, Plaintiff allegedly exited Tabu Nightclub in West Hempstead, New York. *Id.* at ¶¶ 29-35. Upon exiting, Williams observed Defendant Sergeant Arnold speaking to another individual, non-party Greg Morell. *Id.* at ¶ 55. Arnold was at that time informing Morell that his comments were inappropriate and that they would lead to the issuance of a disorderly conduct desk appearance ticket. *Id.*

---

[1] The case caption and Complaint spell the names of Defendants Monell (Monel), Barnes (Barne), and Benedetto (Bene) slightly differently. This Order uses the spelling as set forth in Defendants' Motion for Summary Judgment.

Plaintiff then approached Morell and Arnold, yelling "fuck them." *Id.* At this time, Arnold, along with Defendants Carey and Monell, told Plaintiff to move on because the situation did not concern him. *Id.* at ¶ 56. Plaintiff instead continued to yell "fuck you" and became loud and combative. *Id.* at ¶ 57. Defendants allege that Plaintiff appeared to be intoxicated, as he was slurring his words and was unsteady on his feet. *Id.*

Defendants Carey and Monell purportedly proceeded to take hold of Plaintiff's arms to remove him from the scene. *Id.* at ¶ 63. Plaintiff reacted by moving his arms away from the officers, pushing the officers "with all his might," "swinging" at the officers, and "throwing wild punches." *Id.* at ¶¶ 64-65. Plaintiff also purportedly struck Monell in the shoulder with a closed fist. *Id.* at ¶ 66. Eventually, Plaintiff pulled away and ran down an alley toward the rear of the club. *Id.* at ¶ 67.

The Defendant Officers allegedly instructed Plaintiff to stop running, and Plaintiff eventually did so. *Id.* at ¶¶ 70-71. Arnold then verbally ordered Plaintiff to "get down on the ground." *Id.* at ¶ 71. At that time, there were three officers, spaced approximately five feet from each other, in a semicircle pattern around Plaintiff. *Id.* at ¶ 72. Arnold repeated his command approximately five times, but Plaintiff did not comply. *Id.* at ¶¶ 73-74. At that time, Arnold (5' 9" and 180 pounds) deployed his OC (pepper) spray. *Id.* at ¶¶ 74-75.

Once hit by the OC spray in the face, Plaintiff allegedly became angry, pulled his sweater off, and set himself in a "fighter's stance." *Id.* at ¶ 76. Plaintiff began "lunging, throwing wild punches for 30, 40 seconds, [and] striking the officers with 'glancing punches,'" which caused the officers to "move in defensive positions to avoid the punches." *Id.* at ¶ 77. Carey (5' 8" and 170 pounds) caught up to Plaintiff, discharged his OC spray in two bursts, and ordered Plaintiff to the ground—again, to no avail. *Id.* at ¶¶ 79-80. As a result, Carey and Monell physically

3

engaged Plaintiff, which caused Plaintiff to fall "face/stomach first in the alley, into the wall," all while still fighting the officers. *Id.* at ¶¶ 81-84. The officers were able to subdue and handcuff Plaintiff once he saw blood on his t-shirt, fell to his knees, and began screaming. *Id.* at ¶ 85.

Once Plaintiff was handcuffed and an ambulance had arrived, he allegedly refused to speak, give medical history, or allow vitals to be taken. *Id.* at ¶ 89. He was taken to Mercy Medical Center, where he was noted to be "intoxicated, agitated, aggressive, threatening and swearing at the hospital staff." *Id.* at ¶ 92. Plaintiff kicked a hospital worker at the foot of his bed, and leather restraints were deemed to be required because of his "urgent, unanticipated, unpredictable, violent . . . aggressive behavior." *Id.* at ¶¶ 93-94. Plaintiff was then sedated for the safety of the hospital staff, *id.* at ¶ 95, and was treated for lacerations to his head and right ear, *id.* at ¶ 110. Plaintiff later stated that he sustained a "contusion to his head and right hand," and that he retained those injuries "while struggling with the police." *Id.* at ¶ 87.

Defendants argue that Plaintiff's initial arrest was made pursuant to: Resisting Arrest, Assault in the Third Degree, and Obstructing Governmental Administration in the Second Degree. *Id.* at ¶ 96. According to Defendants, Plaintiff later pled guilty to Resisting Arrest and served fifty days at the Nassau County Correctional Center. *Id.* at ¶ 99.

In further support of their Motion for Summary Judgment, Defendants submit expert witness findings and conclusions from Sergeant Richard Keddy of the Nassau County Police Department. *Id.* at ¶ 101. Sergeant Keddy is an Academic Supervisor at the Nassau County Police Department Academy who supervises and instructs a number of police officer training courses. *Id.* at ¶¶ 102-04. Sergeant Keddy opines that "Williams set in motion a series of events that resulted in his injuries when he refused to cooperate with Nassau County Police Officers," and that "[t]he use of force . . . was justified under the United States Constitution, the

laws of New York State, and the rules and regulations of the Nassau County Police Department." *Id.* at ¶¶ 113-14.

### III. Plaintiff's Responsive Allegations

Plaintiff disputes many of the facts presented by Defendants. *See* Dkt. 34 (Plaintiff's 56.1 Statement of Facts, hereinafter "Pl.'s 56.1").

Plaintiff alleges that on October 21, 2007, he approached a police officer to request the return of Greg Morell's license, but that the officer was not speaking with Morell. *Id.* at ¶¶ 53-54, 120. The officer did not respond, so Plaintiff then asked for the identification a second and third time. *Id.* at ¶¶ 55, 60, 121. Once Plaintiff asked for the identification a fourth time, the officer requested that Plaintiff himself produce identification. *Id.* at ¶ 60. At this point, Plaintiff responded that he did not have identification, and stated: "Why? What'd I do? I ain't do nothing." *Id.* at ¶¶ 61, 122-23. The officer told Plaintiff that he had to come with them, to which Plaintiff responded: "What did I do?" *Id.* at ¶¶ 63, 125. Two to three officers then allegedly grabbed Plaintiff's arm and wrist, and tried to put Plaintiff's hands behind his back. *Id.* at ¶ 125. Plaintiff snatched his arm away and ran toward the back of the club. *Id.* at ¶ 126.

Plaintiff alleges that instead of tackling or striking the officers, as Defendants state, he only tried to push the officers away. *Id.* at ¶ 66. Plaintiff allegedly "said nothing to the officers, did not attempt to strike the officers, [and] did not attempt to kick the officers." *Id.* at ¶ 139. Nonetheless, the officers pulled out pepper spray and started "Mace'ing" Plaintiff, which caused burning and loss of vision in one eye. *Id.* at ¶¶142-43. Defendants also charged Plaintiff, pulled out a flashlight and a baton, grabbed him, and struck him with hard objects on the back, neck, and head. *Id.* at ¶¶ 44-46, 144, 146, 149. Plaintiff was brought to the ground, and even after being handcuffed, Plaintiff alleges, the officers continued to hit him. *Id.* at ¶¶ 148, 151.

5

Plaintiff provides further detail on the injuries that purportedly arose from the October 21, 2007 incident. Plaintiff states that he complained of "burning to his eyes" while he was at the medical center. *Id.* at ¶¶ 169-70. Plaintiff also alleges that he was struck on the right side with a flashlight and that he sustained a severe laceration to the right side of his skull that required nine staples. *Id.* at ¶¶ 152-53. Further, Plaintiff claims that he sustained a laceration to the inside of his right ear, requiring eight stitches, and that an MRI revealed a "bulging disc with impingement" resulting in five months of physical therapy. *Id.* at ¶ 153-54.

Finally, in response to Defendants' allegations of Plaintiff's behavior toward treating medical personnel, Plaintiff argues that those facts are irrelevant, immaterial, inadmissible and privileged. *Id.* at ¶¶ 89-95. Plaintiff objects to Defendants' attempt to introduce expert testimony by Sergeant Keddy on grounds of irrelevance, immateriality, and inadmissibility. *Id.* at ¶¶ 101-114. Plaintiff also argues that the purported expert testimony invades the province of the finder of fact. *See id.*

## STANDARD OF REVIEW

A court appropriately grants summary judgment if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). No genuine issue of material fact exists "where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." *Lovejoy-Wilson v. NOCO Motor Fuel, Inc.*, 263 F.3d 208, 212 (2d Cir. 2001) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)). The moving party must meet its burden by pointing to evidence in the record, including depositions, documents, affidavits, or other materials which it believes demonstrates the absence of a genuine issue of material fact. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). "In determining whether summary judgment is appropriate, [the] Court will construe the facts in the light most

favorable to the non-moving party and must resolve all ambiguities and draw all reasonable inferences against the movant." *Brod v. Omya, Inc.*, 653 F.3d 156, 164 (2d Cir. 2011) (internal quotation marks and citations omitted). The role of the court is not to weigh the evidence and determine the truth of the matter, but rather to perform "the threshold inquiry of determining whether there is the need for a trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50 (1986).

If the moving party fulfills its preliminary burden, the burden shifts to the non-movant to raise the existence of a genuine issue of material fact. Fed. R. Civ. P. 56(c)(1). The non-moving party must make a showing sufficient to establish the existence of each element constituting its case. *See Celotex*, 477 U.S. at 322-23 ("[A] complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial."). Statements that are devoid of specifics and evidence that is "merely colorable" are insufficient to defeat a properly supported motion for summary judgment. *See Bickerstaff v. Vassar Coll.*, 196 F.3d 435, 452 (2d Cir. 1999); *Scotto v. Almenas*, 143 F.3d 105, 114 (2d Cir. 1998). "A dispute about a 'genuine issue' exists for summary judgment purposes where the evidence is such that a reasonable jury could decide in the non-movant's favor." *Beyer v. Cnty. of Nassau*, 524 F.3d 160, 163 (2d Cir. 2008) (citing *Guilbert v. Gardner*, 480 F.3d 140, 145 (2d Cir. 2007)).

## DISCUSSION

### I. Stipulated Dismissals

Plaintiff consents to the dismissal of Barnes and Benedetto as Defendants in this action. *See* Dkt. 35 (Opposition to Motion for Summary Judgment ("Opp.")) at 8. Plaintiff also consents to the dismissal of the 42 U.S.C. § 1983 claim for malicious prosecution. *Id.* at 9. Finally, Plaintiff consents to the dismissal of punitive damages against Defendant Nassau County. *See*

*id.* (citing *City of Newport v. Fat Concerts, Inc.*, 453 U.S. 247, 271 (1981)). Accordingly, all claims against Barnes and Benedetto, and any claim for malicious prosecution[2] or punitive damages against Nassau County are dismissed.

## II. Municipal Liability

Defendants move for summary judgment on Plaintiff's *Monell* claim. They argue that Plaintiff does not set forth factual allegations that the Defendants' allegedly unconstitutional acts were due to a Nassau County policy, practice, and/or custom and that there is no evidence that Nassau County failed to hire, screen, train, retain, supervise, control and discipline the officers. Mot. at 8-9. Defendants argue that Plaintiff has not identified a specific deficiency in the Nassau Police Department's training program that caused Plaintiffs' injuries, and that in fact, officers received "extensive training, including training in excessive force." *Id.* at 9. Further, Defendants allege that no one in a policymaking position was aware of and consciously ignored violations being committed by Defendants Carey, Monell, and Arnold. *Id.* at 9-10.

In response, Plaintiff points to the purported expert report from Sergeant Keddy. Opp. at 4-5. Plaintiff argues that Keddy's conclusion that "the use of force was necessary and reasonable . . . indicates a deliberate indifference to Plaintiff's constitutional rights by a policy level supervisor[.]" *Id.* at 5.

Plaintiff's strategy—to use evidence submitted by Defendants on summary judgment to prove his own *Monell* claim—is novel. However, it is insufficient. As set forth in the eponymous *Monell v. Dep't of Soc. Servs.* decision, it is only when "execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be

---

[2] Defendants also moved to dismiss Plaintiff's pendent malicious prosecution claim in their Motion for Summary Judgment, but the Complaint does not appear to bring a claim. *See* Mot. at 14. To the extent Plaintiff intended to bring such a claim, the Court dismisses it as inadequately pled.

8

said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983." 436 U.S. 658, 694 (1978). To succeed on such a claim, a plaintiff must establish: "(1) an official policy or custom that (2) causes the plaintiff to be subjected to (3) a denial of a constitutional right." *Batista v. Rodriguez*, 702 F.2d 393, 397 (2d Cir. 1983).

Even if, *arguendo*, Keddy is a policymaker whose opinions represent a policy or custom of the Nassau County Police Department, Plaintiff has not established the second element of causation. Plaintiff makes no effort to articulate the "direct causal link" between that policy or custom and the wrongs he allegedly suffered on October 21, 2007. *See City of Canton, Ohio v. Harris*, 489 U.S. 378, 385 (1989); *Vaiana v. Nassau Cnty. Dep't of Corr.*, 11-CV-1013, 2012 WL 541086, at *4 (E.D.N.Y. Feb. 21, 2012) (Bianco, J.) (citing *Monell*, 436 U.S. at 691) ("[L]iability is limited to constitutional violations that occurred as a result of a government's policy or custom."). Plaintiff does not demonstrate that Keddy was the official who directly committed or commanded the alleged violation of Plaintiff's rights, or that Keddy indirectly caused the misconduct of a subordinate municipal employee. *See Jeffes v. Barnes*, 208 F.3d 49, 61 (2d Cir. 2000) ("Because respondeat superior liability is not permissible . . . the courts must apply rigorous standards of culpability and causation . . . to ensure that the indirect-causation theory not result in the municipality's being held liable solely for the actions of its employee.") (internal citations omitted). This deficiency renders Plaintiff's claim insufficient on summary judgment, and therefore the *Monell* claim is dismissed. *See Lojan v. Crumbsie*, 12-CV-0320, 2013 WL 411356, at *3 (S.D.N.Y. Feb. 1, 2013) (Preska, J.) ("Even if municipal policy set in motion the events that culminated in the harm to Plaintiff, more is required to establish the requisite causal link.").

## III. False Arrest

Because federal and state law claims for false arrest are "substantially the same," the Court addresses Plaintiff's § 1983 and New York false arrest claims together. *See Weyant v. Okst*, 101 F.3d 845, 852 (2d Cir. 1996). To state a claim for false arrest, Plaintiff must show that (1) the Defendants intentionally confined him, (2) Plaintiff was conscious of the confinement, (3) Plaintiff did not consent to the confinement, and (4) the confinement was not otherwise justified. *Posr v. Doherty*, 944 F.2d 91, 97 (2d Cir. 1991). Typically, a false arrest claim fails as a matter of law when a plaintiff pleads guilty to the underlying charge. *See Rodriguez v. Vill. of Ossining*, 918 F. Supp. 2d 230, 241 (S.D.N.Y. 2013) (Seibel, J.) (collecting cases).

The Court takes judicial notice of Plaintiff's guilty plea to Resisting Arrest as to N.Y. Pen. L. § 205.30. *See* Mot. at 11-12 (requesting judicial notice); Opp. at 8 (consenting to judicial notice); *see also* Fed. R. Evid. 201(a)-(b). Defendants argue that Plaintiff's guilty plea made his arrest "otherwise privileged," and that as a result, it could not constitute false arrest. *See id.* at 12-14 (citing *Posr*, 944 F.2d at 97).[3] Plaintiff concedes that as a result of his guilty plea, he may not seek redress for the false arrest claim "related to Plaintiff's arrest for resisting arrest." Opp. at 9. Accordingly, the Court dismisses the false arrest claim to the extent that its factual underpinnings coincide with Plaintiff's guilty plea.

---

[3] The parties dispute the scope of the judicial notice that should be taken of the guilty plea. Defendants ask the Court to take note of the Information, which noted that "At the aforementioned date and time, while attempting to place defendant Rashard Williams under lawful arrest for Obstructing Governmental Administration, the defendant [Williams] did resist arrest by flailing his arms and throwing punches at arresting officers." *See* Mot. at 12-14. Plaintiff denies that he admitted the facts in the Information, *see* Opp. at 8-9, but the Court is otherwise persuaded. In the testimony from the allocution, the acceptance of the plea offer was "contingent upon the [Plaintiff] pleading guilty to the charge as outlined, consenting to the prosecution by the accusatory instrument." Dkt. 37 ("Reply") at 10 (internal citations removed).

However, Plaintiff also argues that he has a residual false arrest claim based on the seizure of Plaintiff's person "prior to the time Defendants claim to have arrested Plaintiff for resisting arrest." *Id.* (emphasis removed); *see also id.* at 11 ("The period between the moment in time when Defendants wrongfully seized the Plaintiff for failing to have identification and the period when the officers had the lawful authority to arrest the Plaintiff for resisting arrest is a legally cognizable deprivation of Plaintiff's liberty interest."). In response, Defendants complain that the facts for the pre-arrest false arrest claim are an "improper attempt to set forth a new cause of action [or] . . . amend the Plaintiff's pleadings." Reply at 12.

The Court agrees with Plaintiff that a viable false arrest claim still exists. Confinement that is not part of a formal arrest may give rise to a claim under § 1983. *See Vasquez v. Pampena*, 08-CV-4184, 2009 WL 1373591, at *2-3 (E.D.N.Y. May 18, 2009) (Gleeson, J.) (denying motion to dismiss false arrest claim because plaintiff claimed that he was not able to leave while officer wrote out summons); *see also Posr v. Doherty*, 944 F.2d at 98 ("An arrest need not be formal [to constitute a false arrest]; it may occur even if the formal words of arrest have not been spoken provided that the subject is restrained and his freedom of movement is restricted."). Further, the Complaint contains the factual allegations on which Plaintiff now seeks redress. *Cf. Beck v. City of N.Y.*, 12-CV-9231, 2014 WL 80544, at *3 (S.D.N.Y. Jan. 3, 2014) (Abrams, J.) (dismissing false arrest claim because plaintiff's argument that she was detained at the scene of the accident was "inconsistent with the complaint"). Specifically, the Complaint alleges that in response to Williams's request that his friend's identification be returned, the police officer Defendants demanded that Williams produce his own identification, and when he failed to do so, declared that Williams was under arrest. Compl. at ¶¶ 25-32. Because Plaintiff has submitted evidence supporting this account of events, and Defendant does

11

not move to dismiss the claim on substantive grounds, the claim addressing events prior to Plaintiff's formal arrest will stand. *See* Pl.'s 56.1 at ¶¶ 118-25. At trial, liability and damages for only this part of the false arrest claim will be considered.

## IV. Excessive Force

Defendants move for summary judgment on Plaintiff's excessive force claim, arguing that the level of violence Plaintiff exhibited during his arrest "forced police officers to react in the manner in which they did." Mot. at 20-21. In support of their argument, Defendants cite Plaintiff's guilty plea to Resisting Arrest and argue that the force exuded "was in no way excessive, because the police officer[s'] actions were in response to Plaintiff's actions." *Id.* at 21.

A police officers' application of force is excessive if it is "objectively unreasonable in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." *Maxwell v. City of N.Y.*, 380 F.3d 106, 108 (2d Cir. 2004) (internal citations and quotations omitted). Application of this standard requires an inquiry into the totality of the circumstances, "including the severity of the crime at issue, whether the suspect posed an immediate threat to the safety of others and whether he is actively resisting arrest." *Sullivan v. Gagnier*, 225 F.3d 161, 165 (2d Cir. 2000).

To adopt Defendants' position under these standards, the Court would have to credit Defendants' testimony over Plaintiff's. This the Court cannot do. *See Liberty Lobby, Inc.*, 477 U.S. at 255 ("Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge, whether he is ruling on a motion for summary judgment or for a directed verdict."). Defendants' Motion emphasizes Plaintiff's guilty plea to resisting arrest, but this fact does not definitively swing the

totality of the circumstances test in favor of Defendants. A plaintiff's resistance is one of several factors into objective reasonableness, and the Second Circuit has repeatedly held that "resistance to arrest does not give the officer license to use force without limit in response." *Tracy v. Freshwater*, 623 F.3d 90, 99 (2d Cir. 2010) (internal quotations omitted) (citing *Sullivan v. Gagnier*, 225 F.3d 161, 166 (2d Cir. 2000)).

Further, Plaintiff has introduced facts suggesting that excessive force was applied. For example, Plaintiff testifies that he was struck on the back, neck, and head, by hard objects and a flashlight. Pl.'s 56 at ¶¶ 149-50. Plaintiff also argues that the Defendant officers continued to "hit, kick and strike" him after he was being handcuffed. *Id.* at ¶ 151. These included a kick in the back, and strikes on the head and right side. *Id.* at ¶¶ 151-52. Plaintiff also adduces evidence demonstrating that he sustained a severe laceration to his skull, requiring nine staples, a laceration to his right ear requiring eight stitches, and a "bulging disc with impingement." *Id.* at ¶¶ 152-154. On these factual submissions, the Court cannot find as a matter of law that it was objectively reasonable for officers to have inflicted these alleged injuries on Plaintiff. *See Johnson v. City of N.Y.*, 05-CV-2357, 2006 WL 2354815, at *5 (S.D.N.Y. Aug. 14, 2006) (Stein, J.) ("While not every push or shove . . . violates the Fourth Amendment, there surely would be no objective need to stomp and kick an individual already under police control.") (internal citations omitted). This triable issue of fact renders summary judgment inappropriate. *See Pierre-Antoine v. City of N.Y.*, 04-CV-6987, 2006 WL 1292076 (S.D.N.Y. May 9, 2006) (Lynch, J.) (allegations that officers kicked and punched individual, including after he was handcuffed, precluded summary judgment for defendants on excessive force); *Benson v. Yaeger*, 05-CV-784S, 2009 WL 1584324, at *5 (W.D.N.Y. June 3, 2009) (Skretny, J.) (denying defendants' motion for summary judgment because even though officers were permitted to use the degree of

force necessary to effectuate plaintiff's arrest, a jury could reasonably find that "windmill[ing]" plaintiff's shoulder in so doing was unreasonable).[4]

## V. Qualified Immunity

Defendants argue that qualified immunity should shield them from liability. *See* Mot. at 21-23. However, because conflicting issues of material fact exist, the Court is unable to apply the doctrine at this time.

Qualified immunity attaches when it would have been objectively reasonable for a defendant to believe that his actions did not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *Zellner v. Summerlin*, 494 F.3d 344, 367 (2d Cir. 2007) (citing *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). "[A] conclusion that the defendant official's conduct was objectively reasonable as a matter of law may be appropriate where there is no dispute as to the material historical facts, [but] if there is such a dispute, the factual questions must be resolved by the factfinder." *Kerman v. City of N.Y.*, 374 F.3d 93, 109 (2d Cir. 2004) (internal citations omitted); *see also Oliveira v. Mayer*, 23 F.3d 642, 649 (2d Cir. 1994) ("Though immunity ordinarily should be decided by the court, that is true only in those cases where the facts concerning the availability of the defense are undisputed; otherwise, jury consideration is normally required.") (internal citations omitted).

---

[4] Defendants point to the testimony of Keddy, the Academic Supervisor of the Nassau County Police Academy, to argue that Plaintiff was to blame for the ensuing events and injuries. *See* Mot. at 18; Reply at 17. However, the Court will not allow this purported expert to perform the duties of the trier of fact. *See Nimely v. City of N.Y.*, 414 F.3d 381, 397 (2d Cir. 2005) ("[E]xpert testimony that usurps either the role of the trial judge in instructing the jury as to the applicable law or the role of the jury in applying that law to the facts before it, by definition does not aid the jury in making a decision; rather, it undertakes to tell the jury what result to reach, and thus "attempts to substitute the expert's judgment for the jury's[.]") (internal citations omitted).

Here, there is no question that freedom from false arrest and excessive force are clearly established constitutional rights. *Lennon v. Miller*, 66 F.3d 416, 423 (2d Cir. 1995). Thus, the only issue to be determined is whether it was objectively reasonable for the individual defendants to believe that their acts did not violate Plaintiff's rights. *See Jeanty v. Cnty. of Orange*, 379 F. Supp. 2d 533, 542 (S.D.N.Y. 2005) (Conner, J.). This issue is disputed, as explained above, because there are differing accounts as to what occurred before, during, and after Plaintiff's arrest on October 21, 2007. If Plaintiff's account of the facts is fully credited, it would be difficult to find that the individual defendants could objectively believe that their acts did not violate Plaintiff's constitutional rights. *See supra* Sections III-IV.

Given these contested factual circumstances, the Court cannot proceed to the legal determination necessary for a finding of qualified immunity. Defendants' request for qualified immunity is accordingly denied. *See, e.g., Okoroafor v. City of N.Y.*, 07-CV-9387, 2013 WL 5462284, at *4-5 (S.D.N.Y. Sept. 25, 2013) (Batts, J.) (denying request for qualified immunity on summary judgment because parties presented conflicting factual accounts).

### VI. Punitive Damages

Plaintiff has consented to the dismissal of punitive damages against Nassau County, but he reasserts the availability of punitive damages as to the individual Defendants. *See* Opp. at 23-24. Defendants did not initially move to dismiss the punitive damages as to individual Defendants. *See* Mot. at 23. However, in their reply brief, Defendants assert that dismissal as to the individual Defendants is proper because "Plaintiff fails to raise an issue of material fact with regard to any violation of Plaintiff's constitutional rights, and further fails to specifically allege facts that would at the very least give rise to an inference that the defendants['] conduct was motivated by evil motive, intent, or reckless indifference." Reply at 23.

Defendants' argument is improperly raised for the first time in the reply brief and is substantively incorrect. Plaintiff's account of the arrest and alleged beating raises an issue of material fact as to violation of his constitutional rights and provides sufficient indication, for summary judgment purposes, that officers were motivated by the requisite "ill will or malice." *See Ragin v. Harry Macklowe Real Estate Co.*, 6 F.3d 898, 909 (2d Cir. 1993) (citing punitive damages standard); *see also supra* Sections III-IV. Accordingly, the Court will not dismiss Plaintiff's request for punitive damages as to the individual Defendants Carey, Monell, and Arnold at this time. *See Lazaratos v. Ruiz*, 00-CV-2221, 2003 WL 22283832, at *7 (S.D.N.Y. Sept. 30, 2003) (Jones, J.) ("[B]ecause [Plaintiff] has provided sufficient evidence to overcome summary judgment [with respect to excessive use of force] . . . defendants' motion [for summary judgment] must be denied with respect to punitive damages."); *see Thomas v. Kelly*, 903 F. Supp. 2d 237, 269 (S.D.N.Y. 2012) (Carter, J.) (collecting cases "award[ing] punitive damages against police officers who use excessive force against a defenseless plaintiff").

## CONCLUSION

For the reasons stated above, Defendant's Motion for Summary Judgment is DENIED-IN-PART and GRANTED-IN-PART. By stipulation, Defendants Barnes and Benedetto, Plaintiff's 42 U.S.C. § 1983 claim for malicious prosecution, and Plaintiff's claim for punitive damages against Defendant Nassau County are DISMISSED. Further, Plaintiff's *Monell* claim and false arrest claim as to Plaintiff's formal arrest are DISMISSED. However, Plaintiff may proceed on his false arrest claim as to the events preceding the formal arrest, and on his excessive force claim. Finally, Defendants will not be granted qualified immunity at this time, and Plaintiff may continue to pursue punitive damages against individual Defendants Carey, Monell, and Arnold. The parties are directed to proceed with any remaining discovery in

accordance with this Order. The five-day jury trial in this action will begin at 9:30 a.m. on June 8, 2015.

**SO ORDERED**

Dated: August 18, 2014
      Brooklyn, New York

                                            s/WFK

                                HON. WILLIAM F. KUNTZ, II
                                United States District Judge